UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| MELISSA WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | 5:19-cv-087-JMH |
| | ) | |
| STARBUCKS CORPORATION, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |
| | ) | |

\*\*\*

Melissa Wilson, a former Starbucks employee, filed this lawsuit claiming that Starbucks unlawfully interfered with her attempt to claim leave under the Family Medical Leave Act ("FMLA") and then terminated her employment because she used FMLA leave.

Starbucks moved to dismiss this action and compel arbitration based on the mandatory arbitration provision in Wilson's employment contract with Starbucks. In response, Wilson argues that the arbitration agreement violates K.R.S. § 336.700, which prohibited employers from conditioning employment on an employee's agreement to arbitrate. In support of her argument, Wilson cites *Northern Kentucky Area Development District v. Snyder*, in which the Kentucky Supreme Court held that K.R.S. § 336.700 was not preempted by the Federal Arbitration Act ("FAA") because K.R.S. § 336.700(2) "is not an anti-arbitration clause provision—it is an anti-employment discrimination provision." 570 S.W.3d 531, 537 (Ky. 2018).

At first blush, this action appears to be a complex dispute about whether the mandatory arbitration provision in the Starbucks employment contract violates Kentucky law. The recent enactment of Kentucky Senate Bill 7, however, nullified the Kentucky Supreme Court decision in *Snyder* and allows employers to retroactively and prospectively require employees to agree to mandatory arbitration provisions as a condition of future or continued employment. As a result, the mandatory arbitration provision in the employment contract is retroactively valid under Kentucky law and Starbucks's motion to dismiss [DE 6], most appropriately construed as a motion for summary judgment, is **GRANTED** and this action is **DISMISSED WITHOUT PREJUDICE.**

## I. Factual and Procedural Background

Plaintiff Melissa Wilson worked as a barista at Starbucks. Wilson's employment agreement with Starbucks contained a mandatory arbitration agreement. [DE 6-1 at 15, Pg ID 57]. Specifically, the parties agreed "to use binding individual arbitration to resolve any 'Covered Claims.'" [*Id.*]. The arbitration agreement included a delegation clause that provided that "the Arbitrator—and not a court or agency—shall have exclusive authority to resolve any dispute regarding the formation, interpretation, applicability, enforceability, or implementation of this Agreement." [*Id.*]. The Agreement also excluded certain claims, such as "claims for which this Agreement would be void as a matter

of law," and "actions to enforce this Agreement, compel arbitration, or enforce or vacate an arbitrator's award under this Agreement." [*Id.*].

Wilson initially filed this lawsuit in Woodford Circuit Court alleging FMLA interference and retaliation. [DE 1-1]. Starbucks removed the action to this Court based on arising under jurisdiction. [DE 1].

In lieu of filing an answer, Starbucks moved to dismiss and compel arbitration. [DE 6]. Wilson responded in opposition. [DE 7]. And Starbucks replied. [DE 8]. As a result, this matter is ripe for review.

## II.  Standard of Review

### A.  Appropriate Procedural Vehicle to Consider Motions to Compel Arbitration

Recently, this Court engaged in a detailed analysis of the most appropriate procedural vehicle for considering motions to dismiss to compel arbitration under Rule 12(b) of the Federal Rules of Civil Procedure. *FCCI Ins. Co. v. Nicholas Cty. Library*, No. 5:18-cv-038-JMH, 2019 WL 1234319, at *2-6 (E.D. Ky. March 15, 2019). That analysis need not be replicated here.

Motions to dismiss based on mandatory arbitration provisions are most appropriately considered as motions to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6). That does not end the analysis here, however, because

both parties have submitted matters outside the pleadings pertaining to the mandatory arbitration provision. Federal Rule of Civil Procedure 12(d) provides that, "[i]f, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." As such, Starbucks's motion to dismiss to compel arbitration must be considered as a motion for summary judgment under Rule 56.

## B.  Summary Judgment Standard

Summary judgment is appropriate only when no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) (internal quotations omitted). The Court construes the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the non-moving party's favor. *See*

*Anderson*, 477 U.S. at 248; *Hamilton Cty. Educ. Ass'n v. Hamilton Cty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016).

### III. Analysis

At this juncture, there are three primary issues the Court must address. Initially, the Court must determine what impact, if any, the delegation clause and claim exclusion clause in the arbitration agreement has on this Court's authority to decide initial questions of the applicability and enforceability of the arbitration agreement. Next, assuming the Court may decide the arbitrability issue, the Court must determine whether the arbitration agreement in the employment contract violates Kentucky law. Finally, if the parties must submit their disputes to arbitration, the Court must determine whether to stay the action pending arbitration or whether to dismiss the action from the Court's active docket.

### A. Impact of Delegation Provision

The arbitration agreement in the Starbucks employment contract contains a delegation provision. This provision states, "Except as provided below, Starbucks and I agree that the Arbitrator—and not a court or agency—shall have exclusive authority to resolve any dispute regarding the formation, interpretation, applicability, enforceability, or implementation of this Agreement, including any claim that all of part of this Agreement is void or voidable." [DE 6-1 at 15, Pg ID 57].

Since arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed [] to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). Still, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also '"gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 529 (2019) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). Thus, when the parties' arbitration agreement delegates arbitrability question to an arbitrator, courts must respect the parties' contractual delegation. *Henry Schein*, 139 S.Ct. at 531; *see also AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649-650 (1986).

Initially, the delegation provision in the Starbucks employment contract appears to require submission of questions or applicability and enforceability of the arbitration provision to the arbitrator. But "courts 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" *Henry Schein*, 139 S. Ct. at 531 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Here, later contractual provisions undermine the delegation of applicability and enforceability issues to the arbitrator. The arbitration agreement expressly excludes "(c) actions to enforce this Agreement, compel arbitration, or enforce or vacate an arbitrator's award under this Agreement." [DE 6-1 at 15, Pg ID 57]. In this context, the word action is best understood as a civil judicial proceeding. *See Action*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "action" as "a civil or criminal judicial proceeding."). Thus, the arbitration agreement expressly excludes "[a civil] action[] to enforce this [arbitration] Agreement" or a civil action to "compel arbitration" from claims covered by the arbitration agreement.

The delegation clause and the exclusion clause contradict one another and create ambiguity pertaining to whether the parties agreed to submit initial questions of arbitrability, including questions of applicability and enforceability of the arbitration clause, to the arbitrator. On one hand, the delegation clause provides that the parties agreed to delegate threshold questions of arbitrability to the arbitrator. But, on the other hand, the claim exclusion provision expressly excludes actions to enforce the arbitration agreement and actions to compel arbitration. This inconsistency creates confusion about the intention of the parties at the time of contracting.

Since the arbitration agreement fails to provide clear and unmistakable evidence that the parties intended to arbitrate questions of enforceability or applicability of the arbitration provision in the context of a motion to compel arbitration, the Court will not assume that the parties intended to submit initials questions about arbitrability to the arbitrator. *See Henry Schein*, 139 S.Ct. at 531. As a result, in this action to compel arbitration, the Court will decide initial questions pertaining to the enforceability and applicability of the arbitration provision.

## B. Exclusion of Claims Invalid as a Matter of Law

The agreement also excludes "(b) claims for which this Agreement would be invalid as a matter of law." [DE 6-1 at 15, Pg ID 57]. Wilson argues that her claims are not subject to the arbitration agreement because conditioning her employment on agreement to the arbitration provision was invalid under Kentucky state law when she entered into the employment contract with Starbucks.

But, while novel, that argument misconstrues the relevant contractual exclusion. The arbitration agreement excludes "*claims for which this* [arbitration] *Agreement would be invalid as a matter of law*." [*Id.* (emphasis added)]. Wilson's argument muddles the terms claim and agreement.

Black's Law Dictionary defines "claim" as "[a] statement that something yet to be proved is true" or "the assertion of an

existing right." *Claim*, BLACK'S LAW DICTIONARY (11th ed. 2019).
Here, Wilson's only claims are for FMLA interference and FMLA
retaliation.

Alternatively, an "agreement" is "a mutual understanding
between two or more persons about their relative rights and duties
regarding past and future performances." *Agreement*, BLACK'S LAW
DICTIONARY (11th ed. 2019). The agreement at issue between the
parties is the arbitration agreement, which Wilson argues is
invalid as a matter of Kentucky law.

Thus, the issue before the Court at present is whether the
mandatory arbitration *agreement* is valid and enforceable against
Wilson as a matter of law. If so, Wilson will be required to
submit her substantive FMLA *claims* underlying this litigation to
arbitration. If not, Wilson may continue to pursue her FMLA *claims*
in a court of law. Answering the question about the validity and
enforceability of the *agreement* as a matter of law will simply
determine where Wilson may pursue her substantive *claims*.

Still, the exclusion for claims for which the arbitration
agreement would be invalid as a matter of law is an exclusion of
claims that may not be submitted to arbitration. The exclusion
does not apply to an action seeking to compel arbitration and
determine the validity and enforceability of the arbitration
agreement. The Court is aware of no legal authority supporting
the contention that FMLA claims may not be submitted to

arbitration.  As a result, Wilson's argument that the clause excluding claims for which arbitration agreements would be invalid as a matter of law invalidates the arbitration agreement is unavailing.

Lastly, assuming, for the sake of argument, that Wilson gives the relevant exclusion its correct and most natural meaning, the provision providing for exclusion of claims for which the agreement would be invalid as a matter of law is of no consequence.  At risk of prematurely spoiling the ending, Kentucky law no longer prohibits conditioning employment on an agreement to arbitrate. As a result, the arbitration agreement may not be invalidated under the exclusion here because the arbitration provision in the Starbucks employment contract is valid under Kentucky law.

### C. Enforceability of the Arbitration Agreement

Now, the main attraction.  The principal dispute between the parties is whether the arbitration agreement in the Starbucks employment contract is valid under Kentucky law.

It appears that Wilson electronically agreed to the Starbucks arbitration agreement on or around July 28, 2017.  [DE 6-1 at 18, Pg ID 60].  At that time, Kentucky law prohibited conditioning employment on an agreement to arbitrate future claims, rights, or benefits.  *See* K.R.S. § 336.700(2).  There is no dispute that Wilson was required to agree to arbitrate as a condition of her employment with Starbucks.

In other cases, some parties argued that the previous version of K.R.S. § 336.700(2) was preempted by the FAA. Initially, the FAA preemption advocates lost in state court. The Kentucky Supreme Court foreclosed the preemption argument and held that K.R.S. § 336.700(2) was not preempted by the FAA in a case involving an employee of a state agency.[1] *See Snyder*, 570 S.W.3d at 535-37.

But the winds shifted. The Kentucky General Assembly considered and passed Senate Bill 7 during the 2019 legislative session, nullifying the *Snyder* decision and amending K.R.S. § 336.700 to allow employers to condition future or continued employment on an employee's agreement to arbitrate claims. While consideration of the effect of Senate Bill 7 appears to be a matter of first impression in this Court, other federal courts have recognized the nullification of *Snyder* as a result of the amendments in Senate Bill 7. *See White v. Aetna Life Ins. Co.*, No. 3:19-CV-114-CRS, 2019 WL 2288447, at *3 (W.D. Ky. May 29, 2019); *Tassy v. Lindsay Entm't Enterprises, Inc.*, No. 3:16-CV-077-TBR, 2019 WL 1455797, at *6 (W.D. Ky. Apr. 2, 2019).

Specifically, Senate Bill 7 provides that "[a]ny employer may require an employee or person seeking employment to execute an

---

[1] Starbucks argues that Snyder does not apply to this case because the *Snyder* holding was limited to arbitration agreements between state agencies and state agency employees. [DE 6 at 15, Pg ID 39]. But the Court need not consider the scope of the *Snyder* holding because, as will be discussed, Kentucky Senate Bill 7 nullifies the holding in Snyder and amends K.R.S. 336.700.

agreement for arbitration . . . as a condition or precondition of employment." Senate Bill 7, Act of Mar. 25, 2019 (amending K.R.S. 226.700) (hereinafter "Senate Bill 7").[2] The legislature also stated that "[t]his section shall apply prospectively and *retroactively*." *Id.* (emphasis added). As a result, Senate Bill 7 amended K.R.S. 336.700 and expressly allows employers to condition employment on an employee's agreement to arbitrate disputes.[3]

Another consideration remains. Have the amendments in Senate Bill 7 taken effect? Pursuant to Section 55 of the Kentucky Constitution, a bill becomes law "ninety days after the adjournment of the session at which it was passed," unless the bill contains an emergency clause or has a special effective date. Ky. Const. § 55. Senate Bill 7 contains no emergency clause or special effective date. As a result, Senate Bill 7 became effective ninety days after the end of the 2019 legislative session.

In 2019, the Kentucky regular legislative session adjourned on Thursday, March 28, 2019. Thus, excluding the final day of the

---

[2] The legislative actions relevant to Senate Bill 7 and a link to the unofficial text of the Act may be found at https://apps.legislature.ky.gov/record/19rs/sb7.html.

[3] Wilson has not attacked the retroactive effect of Senate Bill 7 nor argued that the retroactive amendments are invalid as a matter of law. Thus, the Court did not consider the legality of the retroactivity of the law. That consideration, to the extent it is disputed, is a matter of interpretation of state law best resolved by the courts of the Commonwealth of Kentucky.

session, all laws passed during the 2019 Kentucky legislative session became effective on Wednesday, June 27, 2019. As a result, the amendments in Senate Bill 7 have become law in Kentucky.

Of course, some may find this outcome unfair. When the parties contracted, Kentucky law prohibited employers from requiring employees from agreeing to an arbitration provision as a condition of their employment. Additionally, there is no doubt that when this action was filed Kentucky law prohibited conditioning employment on an employee's agreement to arbitrate.

Still, the parties were or should have been aware of the imminent change in the law and the retroactive effect of the Bill, since Senate Bill 7 was signed by the Kentucky Governor on March 25, 2019. Curiously, Wilson did not address or even mention the passage of Senate Bill 7 in her response in opposition to the motion to dismiss and compel arbitration. Wilson's response in opposition [DE 7] was filed on April 22, 2019, almost one month after Governor Bevin signed Senate Bill 7. Additionally, Starbucks noted that the Kentucky General Assembly was considering Senate Bill 7 in its original motion to dismiss. [DE 6 at 17 n.3, Pg ID 41 n.3]. As such, the parties had ample time to consider and address the imminent change in law.

Additionally, this Court must give state law its current effect on the date of decision in this action. This is not a case where the legislature has attempted to retroactively require

13

courts to reopen final judgments, which would implicate concerns about separation of powers. *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995) (holding that a statute requiring courts to reinstate cases and reopen final judgments violated separation of powers). Instead, the Kentucky General Assembly has simply changed a state statute and has given that change retroactive effect in past employment contracts. As a result, the law in the Commonwealth of Kentucky today is that employers may condition employment on an employee's agreement to sign an arbitration agreement, even if that agreement was signed before the law was amended.

Ultimately, while this retroactive change in law may seem unfair, the General Assembly changed the law in Kentucky and gave the amendments retroactive effect. The current law in the Commonwealth of Kentucky is that employers, in prospective and past employment agreements, may require employees to agree to arbitration agreements as a condition of their future or continued employment. Parties finding that result unjust must seek recourse with the people's representatives in the state legislature, not with this Court.

In sum, Wilson and Starbucks entered into an employment agreement that was conditioned on Wilson's agreement to submit claims to arbitration. Subsequent to the passage of Senate Bill 7, such agreements, even agreements entered into before Senate

Bill 7 became effective, are now valid under Kentucky law. As a result, Wilson must submit her claims for FMLA claims to arbitration and Starbucks is entitled to summary judgment on enforceability of the arbitration agreement as a matter of law.

### D.  Right to a Jury Trial Under the FMLA

Notwithstanding the validity of the arbitration agreement, Wilson cites *Frizzell v. Southwest Motor Freight*, 154 F.3d 641, 644 (6th Cir. 1998), claiming that the FMLA includes a right to a trial by jury. [DE 7 at 6-7, Pg ID 68-69]. But that right is not absolute. While the FMLA does provide a right to a jury trial, the FMLA does not preclude enforcement of a plaintiff's agreement to arbitrate claims brought under the FMLA nor does the FMLA prohibit agreements waiving a jury trial.

In absence of a controlling statute, an individual may waive the right to trial by jury. *See K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 755 (6th Cir. 1985); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *Order of United Commercial Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947).

Here, the employment agreement says, "**I understand and agree that arbitration is the only forum for resolving Covered Claims, and that both Starbucks and I waive the right to a trial before a judge or jury in federal or state court**." [DE 6-1 at 15, Pg ID 57

(emphasis in original)].  Thus, Wilson knowingly and voluntarily waived her right to a jury trial in this matter.

Other courts have found agreements to arbitrate enforceable under the FMLA.  *See Seawright v. Am. Gen. Fin. Servs.*, 507 F.3d 967, 977-79 (6th Cir. 2007); *see also Poore v. Caidan Mgmt. Co., LLC*, No. 12-14487, 2013 WL 765301, at *2-4 (E.D. Mich. Feb. 28, 2013) (finding waiver of a jury trial in an arbitration agreement was valid in FMLA case).

In sum, Wilson knowingly and voluntarily waived her right to a trial by jury when she agreed to the waiver contained in the Starbucks employment contract.  As a result of this waiver, Wilson's argument that she is entitled to a jury trial based on the FMLA has no merit.

**E.  Whether to Dismiss or Stay the Action Pending Arbitration**

Finally, as this Court has previously acknowledged, a split of federal authority exists on whether Section 3 of the FAA mandates a stay of the litigation pending arbitration as opposed to a dismissal of the action in certain situations.  *See FCCI Ins. Co.*, 2019 WL 1234319, at *9 (acknowledging the split of authority and citing cases).

The Sixth Circuit has held that a Court may dismiss an action without prejudice if all claims are within the scope of the arbitration agreement.  *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009);  *Hensel v. Cargill, Inc.*, 198 F.3d

245, 1999 WL 993775, at *4 (6th Cir. 1999) (unpublished table decision) ("Under § 3 of the FAA, if any separate claim is referable to arbitration, then a stay of proceedings on the remaining claims is mandatory. However, litigation in which all claims are referred to arbitration may be dismissed."); *see also Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.").

Moreover, the Sixth Circuit has permitted courts to dismiss actions in which the parties did not explicitly request a stay of the action. *See Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 518-19 (6th Cir. 2017) (explaining that the FAA requires a court to stay proceedings pending arbitration only "on application of one of the parties" (quoting 9 U.S.C. § 3)).

Dismissal is appropriate here. First, all of Wilson's FMLA claims must be submitted to arbitration considering the arbitration agreement. Second, neither party requested a stay of this action pending arbitration. Starbucks requested a stay only as an alternative to dismissal. Wilson did not request a stay of the action pending arbitration. As a result, this action will be dismissed without prejudice.

### IV. Conclusion

In this action, the Court has authority to decide initial questions about the enforceability and applicability of the arbitration agreement because the parties did not clearly and unambiguously express an agreement to delegate initial arbitrability decisions to the arbitrator due to the inconsistencies between the delegation and exclusion clauses in the arbitration agreement. Still, enactment of Kentucky Senate Bill 7 validated the arbitration agreement that conditioned Wilson's employment on her agreement to an arbitration provision in the Starbucks employment contract. Thus, Wilson must submit all her claims to arbitration and Starbucks is entitled to summary judgment on enforceability and applicability of the arbitration agreement.

Accordingly, **IT IS ORDERED** as follows:

(1) Starbucks's motion to dismiss to compel arbitration [DE 6] is construed as a motion for summary judgment under Rule 56 because the parties submitted matters outside the pleadings;

(2) Starbucks is entitled to summary judgment on the enforceability of the arbitration agreement and Starbucks's motion for summary judgment [DE 6] is **GRANTED;**

(3) This action is **DISMISSED WITHOUT PREJUDICE;** and

(4) The Court will enter judgment in accordance with this opinion.

This the 2nd day of July, 2019.



Signed By:

**_Joseph M. Hood_**

**Senior U.S. District Judge**